United States District Court
Southern District of Texas
**ENTERED**
August 13, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ERIC RUSSELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-25-2333 |
| | § | |
| HARRIS COUNTY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Eric Russell sued Harris County under 42 U.S.C. § 1983 after Harris County Jail detention officers allegedly conspired with detainees to facilitate an assault on Russell in July 2024. (Docket Entry No. 2). The County moved to dismiss, arguing that Russell failed to state a claim for relief under any theory of municipal liability. (Docket Entry No. 5). Russell moved to strike the County's motion to dismiss. (Docket Entry No. 6). The County responded to the motion to strike, and Russell filed a reply. (Docket Entry Nos. 10, 12). Russell also filed a substantive response to the motion to dismiss, and the County filed a reply. (Docket Entry Nos. 9, 11). Having reviewed the lengthy amended complaint, the motions, the responses and replies, the record, and the law, the court denies Russell's motion to strike and grants the County's motion to dismiss. The reasons for these rulings are explained below.

## I.    Background

The amended complaint alleges that in July 2024, Russell was a detainee at the Harris County Jail. (Docket Entry No. 2, p. 24). On July 16, 2024, a detention officer on Russell's floor shut off the lights in Russell's pod "after receiving a signal from the other detainees." (*Id.*). As soon as the lights were off, several detainees assaulted Russell for several minutes. (*Id.*). Russell

alleges that he lost consciousness and suffered facial injuries, skull fractures, and eye injuries as a result of the assault. (*Id.*). When Russell regained consciousness, he went to the door of the pod, where two officers saw that he was bleeding and escorted him to the medical clinic. (*Id.* at 25). Russell alleges that Jail officials in the medical clinic laughed at him. (*Id.*). Russell was released from the Jail the next day, and he obtained medical treatment at a local emergency room. (*Id.*). Russell's amended complaint does not contain any factual allegations identifying the detention officers who allegedly conspired with the detainees, explaining whether the other detainees were known to be violent before the assault occurred, indicating whether Russell was a particularly vulnerable detainee and whether detention officers knew this, identifying any other detention officers were present when the assault occurred, or explaining what actions were taken to end the assault. Russell also does not allege facts explaining what medical treatment, if any, he received at the Jail before his release.

In November 2024, Russell, together with six other plaintiffs, sued the County under § 1983, alleging claims based on unconstitutional conditions of confinement, failure to train, and failure to supervise. (Docket Entry No. 2). The plaintiffs alleged that the following customs or practices caused their injuries: (1) overcrowding and understaffing at the Jail; (2) failing to properly observe and monitor detainees; (3) denying detainees adequate and proper medical care; (4) institutionalizing the use of excessive force against detainees; and (5) fostering a culture of violence among the detainees. (*Id.*). Because the plaintiffs' claims arose from seven different incidents that occurred on seven different dates in at least three different Jail facilities and that involved at least seven different individual officers, the court severed the plaintiffs' claims into separate actions. (Docket Entry No. 1).

The County moved to dismiss each of the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).  In its motion to dismiss Russell's claims, the County argues that he failed to state a legally sufficient claim under any theory of municipal liability.  (Docket Entry No. 5). Russell moved to strike the separate motions to dismiss on the ground that they were an improper attempt to avoid the court's page limits for motions.  (Docket Entry No. 6).  He also filed a substantive response to the motion to dismiss.  (Docket Entry No. 9).  The County filed a reply. (Docket Entry No. 11).

## II.    The Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint to state a claim upon which relief can be granted.  When the court considers a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).  This includes publicly available judicial documents and other documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the claims.  *See Payne v. City of Houston*, Appeal No. 24-20150, 2025 WL 999085, at *1 (5th Cir. Apr. 3, 2025).

In ruling on a motion to dismiss, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).  But despite this liberal standard, to survive a motion to dismiss under Rule 12(b)(6), the complaint must allege specific facts, not conclusory allegations.  *See Powers v. Northside Indep. Sch. Dist.*,

951 F.3d 298, 305 (5th Cir. 2020). The complaint must also include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). If the facts alleged are facially sufficient, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up). But if the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

## III.    Discussion

### A.    Russell's Motion to Strike

Russell moves to strike the County's motion to dismiss, arguing that by filing a separate motion as to each plaintiff, the County improperly evaded the court's page limits for motions. (Docket Entry No. 6). The amended complaint in this action is 223 pages long and contains 1,169 paragraphs, many containing allegations relating to plaintiffs other than Russell. (Docket Entry No. 2). Under these circumstances, the County's separate motions directed to the allegations relating to each plaintiff were not improper. In addition, on December 30, 2024, the court granted the County's unopposed motion for leave to file motions in excess of the page limits. *See Chavez-Sandoval v. Harris County*, Civil No. 24-cv-3072 (S.D. Tex.), at Dkt. 35. Russell's motion to strike the County's motion to dismiss, (Docket Entry No. 6), is denied.

### B.    The County's Motion to Dismiss

The County moves to dismiss Russell's claims, arguing that he has failed to state a claim against the County under any theory of municipal liability. Under § 1983, municipalities are not

vicariously liable for the unconstitutional actions of their employees. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A plaintiff seeking relief against a municipal defendant, such as the County, must establish that the allegedly unconstitutional acts are "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In general, this requires the plaintiff to (1) identify an official policy, (2) that was promulgated by a municipal policymaker, and (3) that was the moving force behind the violation of a constitutional right. *See Verastique v. City of Dallas, Tex.,* 106 F.4th 427, 432 (5th Cir.), *cert. denied,* 145 S. Ct 772 (2024) (quoting *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023)). The factual allegations necessary to sufficiently plead these elements depend on the nature of the municipal liability claim. But in all cases, "to get past the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City, Tex.*, 879 F.3d 613, 622 (5th Cir. 2018).

Municipal liability claims against a county based on its policies or practices generally arise under one of two theories: (1) claims based on the conditions of confinement, or (2) claims based on an "episodic act or omission." *See Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). Claims based on conditions of confinement are "attacks on general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc). Conditions-of-confinement claims generally concern "durable restraints or impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or excessive heat." *Garza*, 922 F.3d at 633-34. Claims based on episodic acts or omissions generally involve "a particular act or omission of one or more officials" and "an actor usually is interposed between the detainee and the municipality, such that the

detainee complains first of a particular act of, or omission by, the actor." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). In general, "conditions-of-confinement claims challenge the constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-omissions claims challenge the constitutionality of the way in which a policy or custom was applied by a jail official in a particular instance." *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 497 (W.D. Tex. 2020) (citing *Estate of Henson v. Wichita County, Tex.*, 795 F.3d 456, 466–67 (5th Cir. 2015)).

In his response to the County's motion to dismiss, Russell contends that he has alleged sufficient facts to state conditions-of-confinement claims based on: (1) the County's fostering of a culture of violence among detainees; (2) the County's failure or refusal to provide medical care or the provision of improper or insufficient medical care, and (3) systemic understaffing and overcrowding at the Jail. (Docket Entry No. 9, p. 11). Russell also contends that he has alleged sufficient facts to state claims for failure to train and failure to supervise. (*Id.* at 27-30). Because Russell's amended complaint does not allege, and his response to the motion to dismiss does not identify, facts that could show a failure to properly observe and monitor detainees or the use of excessive force by Jail officials, the court considers any claims on those bases to be abandoned.

In the alternative, Russell contends that he has alleged episodic-acts-or-omissions claims based on the failure of the officers to either protect him from the assault or intervene in it and the Jail's failure to provide him with proper medical care. (Docket Entry No. 9, pp. 25-27). No rule bars a plaintiff from pleading both a conditions-of-confinement claim and an episodic-acts-or-omissions claim. *See Shepherd v. Dallas County, Tex.*, 591 F.3d 445, 452 n.1 (5th Cir. 2009). When a plaintiff does so, the court may evaluate the claims either together or separately. *Id.* The court addresses each type of claim in turn.

6

### 1.    The Conditions-of-Confinement Claims

Because pretrial detainees have not been convicted of a crime, conditions of confinement that "amount to punishment" are unconstitutional. *Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Punishment will be inferred "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." *Garza*, 922 F.3d at 632 (quoting *Bell*, 441 U.S. at 539). Conditions of confinement that amount to punishment can arise from either an explicit policy or "an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials." *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645). Because the conditions are challenged as amounting to a policy or practice, a plaintiff alleging a conditions-of-confinement claim need not allege that an individual state actor acted knowingly or intentionally. *See Estate of Henson*, 795 F.3d at 463. Instead, to state a sufficient conditions-of-confinement claim, the plaintiff must allege facts showing: (1) that a rule, restriction, custom, or practice was extensive or pervasive; (2) that the rule, restriction, custom, or practice was not reasonably related to a legitimate governmental objective; and (3) that the rule, restriction, custom, or practice was the moving force or cause of the violation of the inmate's constitutional rights. *See Cadena*, 946 F.3d at 727 (quoting *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (per curiam)).

#### a.    The Claim for Fostering a Culture of Violence Among Detainees

Russell argues that he has stated a conditions-of-confinement claim based on the Jail's alleged policy or practice of fostering a culture of violence among detainees. A "culture of violence," standing alone, is not a constitutional violation. Rather, it is the acts that occur because

of that alleged culture that may result in constitutional violations. Based on the facts Russell has alleged, the court considers whether he could show that his constitutional rights were violated by either a failure to protect or a failure to intervene.

### i.    The Claim for Failure to Protect

To state a claim for a constitutional violation based on a failure to protect, the plaintiff must allege that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (per curiam) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). When the claim is presented as one based on conditions of confinement, the plaintiff must also allege facts that could show: (1) that the County had an extensive or pervasive policy or practice of failing to protect detainees; (2) that the policy or practice was not reasonably related to a legitimate governmental objective; and (3) that the policy or practice was the moving cause of the violation of the plaintiff's constitutional rights. *See Cadena*, 946 F.3d at 727 (quoting *Duvall*, 631 F.3d at 207 (5th Cir. 2011). The description of the policy or custom and its relationship to the constitutional violation must be based on specific facts. *See Peña*, 879 F.3d at 622; *see also Spiller v. City of Texas City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). And to show that the policy or practice was the "moving cause" of the violation, the plaintiff must show that it was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)); *see also Spiller*, 130 F.3d at 167 (the plaintiff must allege facts showing that "the custom or policy served as the moving force behind the constitutional violation") (cleaned up).

8

Russell's amended complaint fails to meet these standards. Russell contends that detention officers conspired with certain detainees to shut off the lights so that those detainees could assault other detainees. But Russell alleges no facts showing that the County has a policy, practice, or custom of permitting or fostering conspiracies between detention officers and detainees. He alleges no facts showing that the County has a policy, practice, or custom of encouraging or facilitating assaults among detainees. And he alleges no facts showing that he was assaulted in furtherance of a conspiracy or that his specific assailants were part of the alleged conspiracy.

In his response to the County's motion to dismiss, Russell points to allegations concerning approximately ten instances of detainee-on-detainee violence that occurred at the Jail between November 2020 and June 2023.[1] (Docket Entry No. 2, pp. 89, 99, 101, 103, 115, 128, 136, 139, 146, 170). He contends that these allegations are sufficient to show that the County has a policy or practice of failing to protect detainees from assaults by other detainees. But none of those prior incidents involve an alleged conspiracy between detention officers and detainees, and none of them involve detention officers actively facilitating an assault. The other identified assaults involved different perpetrators and victims, were motivated by different factors, involved different detention officers, and occurred in several different Jail facilities. These ten incidents over a 30-month period, even taken as true, are insufficient to show a pattern or practice of Jail officials conspiring with detainees to either instigate or facilitate assaults on other detainees. *See, e.g., Damond v. City of Rayville*, 127 F.4th 935, 939 (5th Cir. 2025) (per curiam) (allegations identifying six inmate-on-

---

[1]The amended complaint also contains several allegations that say only that a particular detainee was assaulted, without identifying whether the assault was perpetrated by another detainee or Jail staff, where the assault occurred, and whether any detention officers were present when the assault occurred. These allegations, even considered in combination with the more specific allegations, are insufficient to show that the County either fostered a culture of violence or maintained a culture with deliberate indifference to the rights of detainees.

inmate fights over the course of several months involving different perpetrators and victims were "insufficient to allege a custom or policy of tolerating widespread, unprovoked violence in the detention center or to put the officials on notice of the repeated constitutional violations"). Having failed to identify a specific policy or practice related to the alleged violation of his constitutional rights, Russell has failed to state a conditions-of-confinement claim against the County for a failure to protect.

In addition, even if Russell could show that a County policy or practice of failing to protect detainees exists, he has not alleged facts to show that such a policy or practice actually caused the violation of his constitutional rights. The element of causation often distinguishes a conditions-of-confinement claim from an episodic-acts-or-omissions claim. *See Estate of Henson*, 795 F.3d at 464. Causation turns on whether the plaintiff was harmed by the allegedly unconstitutional conditions themselves or by the actions of a municipal employee. *Id.* The case of *Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997) (en banc), provides an example. The plaintiff in *Scott* sued the city, alleging that an officer sexually assaulted her while she was in pretrial detention. *Id.* at 52. In her conditions-of-confinement claim against the city, she alleged that understaffing at the jail led to the assault. *Id.* In rejecting this claim, the court noted that while Scott alleged that inadequate staffing allowed the incident to occur, the actual harm she alleged was the sexual assault. *Id.* at 53. The court explained:

> In many jail condition cases, the conditions themselves constitute the harm. This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions. Here, however, Scott did not suffer from the mere existence of the alleged inadequate staffing, but only from Moore's specific sexual assaults committed on but one occasion. Consequently, this case does not fit well within the conditions-of-confinement category.

*Id.* at 53-54. The Fifth Circuit has since identified a "rule" that when a particular municipal actor is interposed between the injured party and the municipal defendant, causation does not result from

the policy itself and the case is properly treated as one based on an episodic act.  *See Garza*, 922 F.3d at 633.

Like the plaintiff in *Scott*, Russell does not allege facts demonstrating that his injury resulted from an alleged County policy or practice of failing to protect detainees from assaults. Instead, Russell's alleged constitutional injury arose, if at all, from the misbehavior of individual detention officers who allegedly conspired with the detainees.  While the alleged "culture of violence" may have allowed the misbehavior to occur, the actual harm resulted from the actions of the individual officers, rather than a County policy or practice.  Russell fails to state a conditions-of-confinement claim based on an alleged policy or practice of failing to protect.

The County's motion to dismiss Russell's conditions-of-confinement claim based on a failure to protect is granted.  While Russell did not request leave to amend, the court cannot find that amendment would be futile.  This claim is dismissed without prejudice.

### ii.    The Claim for Failure to Intervene

To state a claim for a constitutional violation based on a failure to intervene, the plaintiff must allege facts that could show that a detention officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) is present at the scene of the constitutional violation; (3) has a reasonable opportunity to prevent the harm; and (4) chooses not to act." *Armstrong*, 60 F.4th at 280 (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).  To allege such a claim as one based on the conditions of confinement, the plaintiff must also allege facts that could show: (1) that the County had an extensive or pervasive policy or practice of failing to intervene in detainee-on-detainee assaults; (2) that the policy or practice was not reasonably related to a legitimate governmental objective; and (3) that the policy or practice was the moving cause of

the violation of the plaintiff's constitutional rights.  *See Cadena*, 946 F.3d at 727 (quoting *Duvall*, 631 F.3d at 207 (5th Cir. 2011).

Russell's amended complaint identifies ten instances of detainee-on-detainee violence that occurred at the Jail between November 2020 and June 2023.  Taking these allegations as true at this stage of the proceedings and construing them liberally, these instances could show that the County has a policy, custom, or practice of discouraging detention officers from intervening in detainee assaults.  But Russell does not allege facts showing that any detention officers were present at the time of the assault, saw the assault occurring, and had the opportunity to intervene but failed to act.  Absent such facts, Russell cannot show that any detention officer actually failed to intervene.  And even if he had identified other officers, Russell does not allege facts showing that a County custom or policy of failing to intervene—rather than the decisions of those individual officers—was the moving cause of his injuries.  He has therefore failed to state a claim against the County based on a failure to intervene.

The County's motion to dismiss Russell's conditions-of-confinement claim based on a failure to intervene is granted.  This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### b.    The Claim for the Denial of Adequate Medical Care

Russell contends that he has stated a conditions-of-confinement claim based on the denial of proper and adequate medical care.  His amended complaint alleges numerous incidents of detainees experiencing delayed, denied, inadequate, or improper medical care.  (Docket Entry No. 2, pp. 71-72, 74-86, 89-92, 94, 99-104, 105-06, 108-13, 117-19, 123, 125-27, 132-34, 136-37, 147-56, 159-61, 163-65, 172-73).  These allegations are supported by a 2009 Department of Justice investigative report that found "systematic deficiencies" in the provision of medical care to

12

detainees. (*Id*. at 31-34). The allegations are also supported by multiple noncompliance reports from the Texas Department of Jail Standards that identify similar deficiencies in the provision of medical care to detainees. (*Id*. at 46-47, 52, 58-59, 67). The allegations are further supported by factual allegations concerning the experiences of numerous other detainees. When considered in total and taken as true, as required at this stage of the litigation, these allegations are sufficient to plead that the County permitted or condoned an extensive and pervasive practice of failing to provide adequate and proper medical care at the Jail. Russell also alleges sufficient facts to support the second element, that the delays or denials of proper and adequate medical care were not reasonably related to a legitimate governmental objective.

But Russell again does not allege sufficient facts to establish the causation element of his claim. As explained above, to plead the causation element of a conditions-of-confinement claim, the plaintiff must allege facts showing that policy or practice was "closely related to the ultimate injury" and "actually caused the constitutional violation complained of." *Johnson*, 379 F.3d at 310); *Spiller*, 130 F.3d at 167. But Russell's amended complaint does not allege facts that could show that he was injured as the result of inadequate or improper medical care.

Russell alleges that two officers took him to the Jail's medical clinic after the assault. While he was there, several officers laughed at him. He was returned to a different pod at the Jail after being seen in the clinic. But Russell does not allege that he did not receive timely and appropriate medical care at the clinic, nor does he allege that his injuries became more severe because of a lack of treatment or improper treatment. While a plaintiff is not required to include "detailed factual allegations" in a complaint, he must allege enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Russell's amended complaint fails to

meet this standard as to the causation element and so fails to state a claim upon which relief can be granted based on the failure to provide proper and adequate medical care.

In his response to the County's motion to dismiss, Russell alleges for the first time that he did not receive "a proper evaluation" at the clinic and that the care was inadequate because he was not immediately sent to the hospital. (Docket Entry No. 9, p. 6). He alleges that Jail officials failed to provide him with a full evaluation, failed to provide any follow-up care, and sent him to a pod rather than transferring him to the hospital. (*Id.* at 26). But these allegations do not appear in the amended complaint. The court may not consider new facts alleged for the first time in a response to a motion to dismiss when ruling on that motion. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint."). Making statements about facts in a motion does not plead those facts. These newly presented facts may not be considered to deny an otherwise meritorious motion to dismiss.

In the absence of factual allegations showing that the Jail's alleged practice of denying detainees adequate and proper medical care caused Russell's injuries, he does not allege a facially sufficient conditions-of-confinement claim based on this alleged policy or practice. The County's motion to dismiss Russell's conditions-of-confinement claim based on inadequate or improper medical care is granted. This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### c.    The Claim of Overcrowding and Understaffing

Russell also argues that he has stated a conditions-of-confinement claim based on systemic overcrowding and understaffing at the Jail. This claim fails because Russell does not allege facts showing that either overcrowding or understaffing caused him injury.

14

While the failure to provide adequate and proper medical care and the failure to intervene or protect an inmate from assaults among detainees may be unconstitutional, subjecting detainees to overcrowding or understaffing is not, by itself, a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A plaintiff bringing a conditions-of-confinement claim based on overcrowding or understaffing must allege facts showing that those conditions actually caused a constitutional violation which resulted in his injury.

Throughout its 223 pages, Russell's amended complaint alleges that every violation of every pretrial detainees' constitutional rights resulted in some way from the alleged Jail overcrowding and understaffing. But Russell does not allege facts showing that the alleged overcrowding and understaffing was the moving cause of his injuries. He does not allege that he suffered harm from the presence of overcrowding or understaffing. Instead, the harm he identifies resulted from the officers' alleged failures to protect him from the assault, to intervene in the assault once it began, and to provide him with proper and timely treatment for his injuries. Because Russell does not allege facts that could show that the overcrowding and understaffing conditions were the moving cause of the assault and subsequent lack of treatment, he fails to state a conditions-of-confinement case based on these conditions.

The County's motion to dismiss Russell's conditions-of-confinement claim based on overcrowding and understaffing is granted. This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### 2.    The Episodic-Act-or-Omission Claims

As an alternative to his conditions-of-confinement claims, Russell argues that he has sufficiently pleaded episodic-acts-or-omissions claims based on the failure to protect, the failure to intervene, and the failure to provide proper medical care. (Docket Entry No. 9, pp. 25-26).

15

Unlike a conditions-of-confinement claim, an episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions." *Estate of Henson*, 795 F.3d at 463 (quoting *Shepherd*, 591 F.3d at 452).  For liability to attach, "the municipality must cause the constitutional tort, which occurs when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bolton v. City of Dallas, Tex.,* 541 F.3d 545, 548 (5th Cir. 2008) (per curiam) (quoting *Monell,* 436 U.S. at 694) (cleaned up).  This requires the plaintiff to show "(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 633 (quoting *Brumfield* v. *Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).

### a.        The Claim for Failure to Protect

Pleading the first element of an episodic-acts-or-omissions claim for failure to protect requires Russell to allege facts showing that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones*, 188 F.3d at 326 (quoting *Newton*, 133 F.3d at 308).  To satisfy the deliberate indifference element, Russell must allege that the detention officers "(1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Rogers v. Boatright*, 709 F.3d 403, 407-08 (5th Cir. 2013); *see also Cope v. Cogdill*, 3 F.4th 198, 207 & n.7 (5th Cir. 2021) (requiring allegations showing that the defendants subjectively knew that the detainee faced a substantial risk of serious harm in a pretrial detainee's failure-to-protect claim).  The facts concerning the alleged risk must be "specific to the detainee, and not a mere general risk

16

of violence" because "general risks of violence in prison confront virtually every detainee." *Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (cleaned up).

Russell's allegations do not satisfy this standard. Russell seems to contend that the alleged conspiracy placed him at a substantial risk of serious harm, but he alleges no facts that could support finding that such a conspiracy existed. *See Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (to state a § 1983 claim based on a conspiracy, the plaintiff must allege specific facts showing an agreement; conclusory allegations without reference to specific facts are not sufficient). In addition, he alleges no facts that could show that he specifically—rather than all detainees in the pod—faced a substantial risk of serious harm when the lights were turned out. In the absence of allegations that showing that detention officials were deliberately indifferent to a specific and significant risk to Russell's health and safety, he does not show that his constitutional rights were violated. And without allegations showing such a violation, he cannot show a County policy or custom "adopted and maintained with objective deliberate indifference" was the actual cause of his alleged injuries. *Garza*, 922 F.3d at 633 (quoting *Brumfield*, 551 F.3d at 331).

The County's motion to dismiss Russell's episodic-acts-or-omissions claim based on a failure to protect is granted. This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### b.    The Claim for Failure to Intervene

Pleading the first element of an episodic-acts-or-omissions claim based on a failure to intervene requires Russell to allege facts showing that detention officers knew that (1) fellow officers were violating his constitutional rights, (2) the officers were present at the scene when the constitutional violation was occurring, (3) the officers had a reasonable opportunity to prevent the harm, and (4) they chose not to act. *See Armstrong v. Ashley*, 60 F.4th 262, 280 (5th Cir. 2023).

But Russell's amended complaint does not allege facts that could establish any of these elements. He does not identify any fellow officers who knew of the alleged conspiracy, who knew of the alleged plan to turn off the lights, who were present when the lights were turned off, who knew that an assault was occurring in the dark, and who failed to act to stop it despite having the time to do so.

Pleading the second element requires Russell to allege facts that could show that when the officers failed to intervene, they were following a policy or practice that the County adopted and maintained with objective deliberate indifference to the plaintiff's constitutional rights. *See Brumfield*, 551 F.3d at 331. But because Russell does not allege any facts showing that any officers were present and failed to intervene, he does not show that any alleged failure to act was caused by or the result of a County policy or practice.

The County's motion to dismiss Russell's episodic-acts-or-omissions claim based on a failure to intervene is granted. This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### c.    The Claim for the Denial of Medical Care

Pleading the first element of a denial-of-medical-care claim requires Russell to allege facts showing that Jail officials subjectively knew that he faced a substantial risk of serious harm and that they responded to that knowledge with deliberate indifference. *See Hare*, 74 F.3d at 650. Pleading the second element requires Russell to allege facts that could show that when Jail officials violated his rights, they were following a policy or practice that the County adopted and maintained with objective deliberate indifference to his constitutional rights. *See Brumfield*, 551 F.3d at 331. A policy or practice can be shown by alleging facts that demonstrate "a pattern of unconstitutional conduct on the part of municipal actors or employees." *Zarnow v. City of Wichita Falls, Tex.*, 614

18

F.3d 161, 169 (5th Cir. 2010) (cleaned up).  The plaintiff must also show that the alleged policy or practice was the moving cause of the alleged constitutional violation.  *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009).

Russell's allegations do not meet these standards.  The amended complaint alleges that a detention officer took Russell to the medical clinic after the assault.  He was then transferred to a pod away from his assailants for the remainder of the night.  After Russell's release from Jail the following day, he sought treatment at a hospital emergency room.  Russell does not allege facts showing that he did not receive either an evaluation or treatment in the Jail medical clinic.  He does not allege that he suffered further injury because he was not immediately transferred to the hospital.  Because Russell's allegations are insufficient to show that he was denied adequate and proper medical care, he has not sufficiently alleged facts that could show that Jail officials acted in accordance with an extensive and pervasive policy or practice of denying pretrial detainees necessary medical care.

The County's motion to dismiss Russell's episodic-acts-or-omissions claim based on the failure to provide medical care is granted.  This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### 3.    The Claim for a Failure to Train

Russell also alleges that the County is liable for failing to train Jail employees.  "A failure-to-train action is a type of *Monell* claim."  *Hutcheson v. Dallas County, Tex.*, 994 F.3d 477, 482 (5th Cir. 2021).  A municipality's failure to train detention officers in constitutional practices and limits "can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of [detention officer] novices."  *Peterson*, 588 F.3d at 849.  To allege a claim for municipal liability on a failure-to-train

19

theory, a plaintiff must allege facts showing that: "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson*, 994 F.3d at 482; *see also Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 312 (5th Cir. 2023). This standard requires the plaintiff to "allege with specificity how a particular training program is defective." *Edwards*, 70 F.4th at 312; *see also Armstrong*, 60 F.4th at 277 (a conclusory allegation that officers received deficient training "across the board" is not enough to plead deliberate indifference). The plaintiff must also allege facts showing that the municipal policymaker made "a deliberate choice to follow a course of action . . . from among various alternatives." *City of Canton,* 489 U.S. at 389 (cleaned up). This requires the plaintiff to allege facts showing "a pattern of similar constitutional violations by untrained employees," which would show that the policymaker had notice that the particular course of training is inadequate but failed to respond. *See Porter v. Epps*, 659 F.3d 440, 446-47 (5th Cir. 2011). To allege a pattern, the plaintiff must allege enough sufficiently similar prior incidents to support an inference that alleged violations result from a systemic lack of training. *See Johnson*, 83 F.4th at 946-47. The plaintiff must also allege facts that could show that the failure to train is so closely related to the alleged injury that it cannot be "attribut[ed] to a particular officer's shortcomings." *Garza*, 922 F.3d at 637 (quoting *City of Canton*, 489 U.S. at 388-91).

Russell's amended complaint does not meet this standard. The only factual allegation Russell makes about training is to point to the 2023 report from the Texas Commission on Jail Standards, which found that certain officers had not received training on suicide prevention. (Docket Entry No. 2, p. 60). Russell alleges no other facts about how the County trains its

detention officers or medical staff.  He alleges no facts that could show that a training program does not exist or identifying specific deficiencies in the County's training that resulted in the constitutional violations he alleges he suffered.  He alleges no facts that could show that any officers who watched the assault had not been trained.

The thrust of Russell's allegations is that if the County was properly training its detention officers, the officers would have intervened in the assault and he would have received some different type of medical care at some different time.  But a "[f]ailure to train cannot be alleged by the simple assertion that an occurrence of the incident proves the need for additional or different training."  *Oliveria v. City of Jersey Vill.*, No. 4:21-cv-3564, 2023 WL 7222124, at *4 (S.D. Tex. Nov. 2, 2023) (quoting *Garcia v. Harris County*, No. 4:22-cv-198, 2022 WL 2230469, at *2 (S.D. Tex. June 2, 2022)).  Russell's factual allegations are insufficient to show that his injury was attributable to a systemic failure to train rather than to the detention officers' individual decisions and shortcomings.  And although Russell repeatedly alleges that the County failed to train its detention officers, his bare allegations of a systemic failure to train, without facts, are legal conclusions.  The court is not bound to accept legal conclusions as true when ruling on a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

Russell fails to allege facts that could show that the County had an ongoing policy or practice of failing to train its detention officers and that this policy or practice caused the violation of his constitutional rights.  His allegations are legally insufficient to state a claim for failure to train.  Russell's claims based on an alleged failure to train are dismissed, without prejudice because the court cannot find that amendment would be futile.

### 4.    The Claim for a Failure to Supervise

To state a claim for municipal liability on a theory of a failure to supervise, the plaintiff must allege facts showing that (1) the city failed to supervise the officers involved; (2) there is a causal connection between the failure to supervise and the violation of the plaintiff's rights; and (3) it was, or should have been, obvious to municipal policymakers that the "highly predictable consequence" of not supervising the officers was that the officers would violate the plaintiffs' constitutional rights. *See, e.g., Peterson*, 588 F.3d at 850; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc).  As with a claim for failure to train, a plaintiff claiming a failure to supervise must allege facts showing a pattern of similar violations that would make the need for more or different supervision "obvious." *City of Canton,* 489 U.S. at 390.  "Plaintiffs must show that in light of the duties assigned to specific officers or employees the need for more or different [supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 457 (M.D. La. 2022) (cleaned up).

As with his failure-to-train claim, Russell's claim for failure to supervise does not meet this standard.  Russell alleges no facts that could show that the County did not supervise its detention officers.  He alleges no facts showing that the need for more or different supervision of the detention officers involved in the incident was so obvious that it could reasonably be said that the County was deliberately indifferent to the need for additional or better supervision.  He alleges no facts showing that any prior similar incidents have occurred that would demonstrate that additional supervision would have prevented the alleged conspiracy, the assault itself, or the officers' response to it.  In short, Russell alleges no facts showing that deficiencies in the County's supervision plan caused the alleged violation of his constitutional rights.

Russell's allegations are legally insufficient to state a claim for failure to supervise. His failure-to-supervise claim is dismissed, without prejudice because the court cannot find that amendment would be futile.

## IV.     Conclusion

Russell's motion to strike the County's motion to dismiss, (Docket Entry No. 6), is denied. The County's motion to dismiss, (Docket Entry No. 5), is granted. Russell must file any motion seeking leave to file a second amended complaint, with the proposed second amended complaint attached, no later than **September 24, 2025**.

SIGNED on August 13, 2025, at Houston, Texas.

_____
                    Lee H. Rosenthal
            Senior United States District Judge